UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                       Case No. 13-cr-20358

                                        Hon. Matthew F. Leitman

v.

SUBHA S. REDDY,

        Defendant.

_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE (ECF No. 167)

Defendant Subha S. Reddy is currently serving a 30-month sentence for convictions of health care fraud, conspiracy to violate the Anti-Kickback statute, and money laundering. (*See* Judgment, ECF No. 117, PageID.1746.)  Reddy now moves for compassionate release from custody. (*See* Mot. for Compassionate Release, ECF No. 167.)

Reddy is seventy-three years old and suffers from several serious medical conditions, including Type II diabetes, hypertension, and orthopedic problems that cause her severe pain.  Moreover, Reddy's age and health problems leave her especially vulnerable to the COVID-19 virus that has already caused the death of at least one prisoner at FMC Carswell, the facility where Reddy is now serving her sentence. *See* *COVID-19* *Cases*, Fed. Bureau of Prisons,

https://www.bop.gov/coronavirus (listing one confirmed coronavirus-related death at FMC Carswell).[1]  For all of these reasons, the Court concludes that compassionate release is warranted.  Accordingly, the Court **GRANTS** Reddy's motion.

# I

## A

On July 13, 2015, Reddy pleaded guilty to three offenses: health care fraud, conspiracy to violate the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b, and money laundering. (*See* Rule 11 Plea Agreement, ECF No. 95, PageID.1450–1451.) Reddy's sentencing guidelines range called for a custodial sentence of 108–135 months. (*See id.*, PageID.1456.)  The Government requested that the Court grant a downward departure from the guidelines range (based upon Reddy's substantial assistance to the Government) and impose a sentence of 97 months. (*See* Gov't Sentencing Memorandum, ECF No. 111, PageID.1625.)

On January 9, 2018, the Court sentenced Reddy to serve 30 months in custody. (*See* 1/9/18 Sentencing Hr'g Tr. at 53:5–10, ECF No. 164, PageID.2034; Judgment, ECF No. 117, PageID.1747.)  The Court's decision to depart further below the guidelines range than recommended by the Government was based, in large part, on

---

[1] *See also* Katie Shepherd, *Coronavirus Kills Its First Female Federal Inmate Weeks After She Had an Emergency C-section*, Wash. Post (Apr. 29, 2020, 6:29 AM), https://www.washingtonpost.com/nation/2020/04/29/pregnant-inmate-death-coronavirus/.  The prisoner tested positive for the virus on April 4, 2020. *See id.*

Reddy's physical and mental health challenges. (*See* 1/9/18 Sentencing Hr'g Tr. at 53:5–10, ECF No. 164, PageID.2034.)  At the time of her sentencing, Reddy's health impairments included:

- Type II diabetes;
- Hypertension;
- Spinal fracture;
- Chronic back pain;
- Osteoarthritis;
- Osteoporosis;
- Impaired memory and cognitive abilities;
- Depression; and
- Suicidal ideation.

(*See* Reddy Sentencing Memorandum, ECF No. 110, PageID.1537–1543; Medical Records, ECF No. 110-2, PageID.1567–1623; 7/13/15 Plea Hr'g Tr. at 11:9–12:13, ECF No. 112, PageID.1647–1648.)

Following Reddy's sentencing, she continued to suffer from several serious medical conditions. (*See* Medical Records, ECF No. 149-1; *see also* Health Summary, ECF No. 149-1, PageID.1901–1904; Reply to Gov't Resp. to Mot. to Resentence Def., ECF No. 155, PageID.1943–1946.)  The Court twice extended Reddy's report date due to those conditions.  On January 23, 2018, the Court extended her report date until February 3, 2019, so that Reddy could have knee replacement surgery and then rehabilitate from the surgery. (*See* Order Delaying

Date by which Def. Must Surrender to Begin Serving Sentence, ECF No. 118.)  On January 18, 2019, the Court again extended Reddy's report date until July 17, 2019, so that Reddy could complete her rehabilitation from a second knee replacement surgery. (*See* Second Order Delaying Date by which Def. Must Surrender to Begin Serving Sentence, ECF No. 137.)

Before Reddy reported to prison to begin serving her sentence, she filed a motion requesting that the Court modify her sentence. (*See* Mot. to Modify Sentence, ECF No. 149.)  The Court denied Reddy's motion on the ground "that it lacks authority to modify the sentence." (Order Denying Mot. to Modify Sentence, ECF No. 153, PageID.1929.)  Reddy filed a motion for reconsideration (*see* Mot. for Reconsideration, ECF No. 155), and the Court denied that motion. (*See* Order Denying Mot. for Reconsideration, ECF No. 156.)  On July 18, 2019, Reddy appealed the Court's denial of her motions. (*See* Notice of Appeal, ECF No. 159.)

On July 22, 2019, with her appeal pending in the United States Court of Appeals for the Sixth Circuit, Reddy reported to prison. (*See* Resp. to Mot. for Compassionate Release, ECF No. 171, PageID.2111.)  Reddy is currently designated to FMC Carswell. (*See id.*)  Reddy's projected release date is September 6, 2021. (*See id.*)  Reddy is currently seventy-three years old. (*See* Mot. for Compassionate Release, ECF No. 167, PageID.2076.)

**B**

On August 19, 2019, Reddy petitioned the Bureau of Prisons (the "BOP") for compassionate release (the "Petition"). (*See* Petition, ECF No. 184-2.)   Reddy submitted the petition herself. (*See id.*; Def.'s Reply, ECF No. 178, PageID.2174.) The Petition included a five-page letter from Reddy's attorney detailing Reddy's declining medical condition. (*See* Petition, ECF No. 184-2, PageID.2236–2240.) The Petition also included six medical reports from four of Reddy's physicians describing her medical impairments, including her spinal fracture, osteoarthritis, depression, and narcotic dependency. (*See id.*, PageID.2241–2246.)

On September 4, 2019, the BOP denied the Petition in a one-page, three-paragraph memorandum (the "Memorandum"). (*See* Memorandum, ECF No. 178-4.)  The Memorandum explained the denial as follows:

> Currently, you do not meet the criteria for a Reduction in Sentence based on Medical Circumstances – Debilitated Medical Condition. A review of your current medical summary reflects that you are not confined to a bed or chair more than 50% of waking hours and you are able to complete self-care activities independently, including feeding, bathing, and dressing. Also no cognitive deficits were noted during a medical review. After careful review of this information, consideration for Compassionate Release/RIS is denied. In compliance with Bureau of Prisons' Program Statement 5050.50, you may appeal this denial through the Administrative Remedy Program.

(*Id.*, PageID.2201.)  Reddy did not file an administrative appeal of the denial.

5

## C

On March 30, 2020, Reddy, though counsel, filed the instant Motion for Compassionate Release in this Court. (*See* Mot. for Compassionate Release, ECF No. 167.)  At that time, Reddy's appeal of this Court's denial of her motion for a modified sentence remained pending in the Sixth Circuit. (*See* Gov't Resp., ECF No. 171, PageID.2111, 2114–2115.)

In her motion, Reddy highlights many of the same medical conditions that she identified in her Petition. (*See* Mot. for Compassionate Release, ECF No. 167, PageID.2073–2079.)  Reddy also argues that "the coronavirus is spreading through the prison and jail populations" and that she "is at extreme risk" because of the virus due to her several serious health conditions. (*Id.*, PageID.2078.)  The Government opposes Reddy's motion. (*See, e.g.*, Gov't Resp., ECF No. 171.)

## D

At some point in April, 2020, while Reddy's Motion for Compassionate Release was pending before the Court, the BOP considered Reddy "for home confinement pursuant to the Attorney General's directives from March 26 and April 3, 2020." (Gov't Resp. to the Court's Order, ECF No. 184, PageID.2224–2225.) Those directives required the BOP to "identify the inmates most at risk from COVID-19" and "'to consider the totality of circumstances for each individual inmate' in deciding whether home confinement is appropriate." (Gov't Supp. Br.,

ECF No. 177, PageID.2163–2164; quoting 3/26/20 Directive to BOP.)   The directives also instructed the BOP "to consider '*all* at-risk inmates—not only those who were previously eligible' for home confinement or compassionate release." (*Id.*, PageID.2164; emphasis in original; quoting 4/3/20 Directive to BOP.)   These directives "did not require inmates to have served a specific length of their sentences in order to be considered for home confinement." (*See* Gov't Resp. to the Court's Order, ECF No. 184, PageID.2225.)

On April 21, 2020, "BOP denied Reddy for home confinement, as she had not served 50 percent of her sentence." (*Id.*)  It turns out that, after the Attorney General issued its directives on March 26 and April 3, 2020, the BOP "changed its protocols and instead required inmates to have served at least 50 percent of their sentences in order to be eligible for home confinement." (*Id.*)

On April 22, 2020, the day after the BOP denied Reddy for home confinement, the BOP "issued new guidance" clarifying that inmates who "have 18 months or less remaining in their sentences and have served 25% or more of their sentence" may be granted home confinement. (*Id.*; quoting 4/22/20 Home Confinement BOP Memorandum, ECF No. 184-1, PageID.2231.)   Because Reddy qualifies for consideration for home confinement under this new guidance, on April 23, 2020, the BOP decided "that it will again consider Reddy for home confinement." (*Id.*, PageID.2226.)

To the Court's knowledge, the BOP has not yet rendered a decision as to whether it will release Reddy to home confinement under the new guidance. In a report to the Court on May 4, 2020, the Government provided the following update from the BOP regarding its review of Reddy's claim: "Inmates who have more serious medical conditions (considered to be Care Level 3 and Care Level 4) are being given priority. Ms. Reddy is Care Level 2. The Case Manager did not have a specific time frame for when she would be able to work on REDDY but guessed that it would be a week or more."

## II

Before turning to the merits of Reddy's claim for compassionate release, the Court first addresses two procedural objections raised by the Government.

## A

The Government argues that this Court lacks jurisdiction over Reddy's motion because she has an appeal pending before the Sixth Circuit. (*See* Gov't Resp., PageID.2111, 2114–2115.) However, after the Government raised this argument, Reddy voluntarily dismissed that appeal. (*See* Order Dismissing Appeal, ECF No. 183.) Accordingly, the Court does not lack jurisdiction on the basis that Reddy has an appeal pending.

**B**

The Government next argues that Reddy has not exhausted her administrative remedies as required by 18 U.S.C. § 3582(c)(1)(A).  That statute provides that a defendant may move for compassionate release if either (1) "the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf," or (2) "30 days [have elapsed] from the receipt of such a request by the warden of the defendant's facility." § 3582(c)(1)(A).  According to the Government, Reddy failed to exhaust her administrative remedies because she did not file an administrative appeal from the BOP's denial of her Petition:

> Reddy states that she applied for compassionate release directly with BOP due to her ongoing medical problems after she reported to prison in July 2019, and that BOP denied this request in September 2019. Dkt. 167 at 9. Reddy has provided no documentation indicating that she exhausted her appeal rights before BOP that would warrant judicial review of that request. Regardless, Reddy's request from 2019 is separate from her request in the instant motion, which is premised upon the health risks posed due to the COVID-19 pandemic. Reddy cannot now piggyback off a previous claim to BOP that predated the COVID-19 pandemic, particularly when Reddy's claim in the instant motion hinges upon the risks created as a result of the pandemic.

(Resp., ECF No. 171, PageID.2115–2116.)

For two reasons, the Court will not decline to review Reddy's motion on the ground that she failed to exhaust her remedies.  First, under the unique circumstances of this case, the purposes of the exhaustion requirement have been satisfied even

though Reddy did not administratively appeal the denial of the Petition.  Reddy's

Petition presented the portion of her claim concerning her medical conditions.  The

Petition included lengthy and detailed letters from Reddy's attorney and physicians

detailing her declining medical condition. (*See* Petition, ECF No. 184-2,

PageID.2236-2246.)  The BOP rejected the Petition. (*See* Memorandum, ECF No.

178-4.)  While it is true, as the Government notes, that Reddy did not file an

administrative appeal from that denial, the BOP nonetheless again considered

whether to release Reddy to home confinement.  And the BOP's second

consideration took into account the COVID-19 pandemic.[2]  Thus, the BOP has had

two opportunities to review and consider whether to release Reddy on home

confinement, and it has twice declined to do so.  Accordingly, the purpose behind

the exhaustion requirement of § 3582(c)(1)(A) – providing notice to the BOP of a

prisoner's claim for release and giving the BOP more than one opportunity to review

_____

[2] As noted above, the second time the BOP considered Reddy for release, it declined to release her to home confinement because she had not yet served fifty percent of her sentence.  The Government may suggest that that decision should not be considered in the context of exhaustion because the decision was not based on the merits of Reddy's Petition.  But the key point is that the BOP took a second opportunity – in April, 2020 – to consider whether Reddy was an appropriate candidate for release based upon, among other things, her health circumstances and the COVID-19 pandemic, and the BOP declined to grant release to home confinement based upon the fifty-percent-of-the-sentence condition that the BOP unilaterally set.

the claim before the inmate brings a motion – has already been served by Reddy's Petition and the BOP's recent review of her claim.

Second, for the reasons explained at length by United States District Judge Jed Rakoff, excusing strict exhaustion under § 3582(c)(1)(A) during the COVID-19 pandemic is consistent with the congressional intent underlying the exhaustion requirement. *See United States v. Haney*, --- F. Supp. 3d ---, 2020 WL 1821988, at *3–4 (S.D.N.Y. Apr. 13, 2020) (explaining in detail how "Congressional intent not only permits judicial waiver of the 30-day exhaustion period, but also, in the current extreme circumstances, actually favors such waiver, allowing courts to deal with the [COVID-19] emergency before it is potentially too late").[3] The *Haney* approach has recently been explained by another Judge in this district:

> [T]he court in *United States v. Haney*, No. 19-CR-541, 2020 WL 1821988 (S.D.N.Y. Apr. 13, 2020) (Rakoff, J.), found some flexibility in the exhaustion requirement by examining the statutory text. The court first noted that exhaustion requirements generally "serve[] the twin purposes of protecting administrative agency authority and promoting judicial efficiency." *Id.* at *3 (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)). But because the

---

[3] Numerous district courts, including in this district, have reached this same conclusion when reviewing compassionate release claims from prisoners who are at risk of severe consequences from contracting COVID-19. *See United States v. Atwi*, No. 18-20607, 2020 WL 1910152, at *3 (E.D. Mich. Apr. 20, 2020); *United States v. Pinkerton*, No. 15-30045-3, 2020 WL 2083968, at *3–5 (C.D. Ill. Apr. 30, 2020); *United States v. Bess*, No. 16-156, 2020 WL 1940809, at *7 (W.D.N.Y. Apr. 22, 2020); *United States v. Sanchez*, No. 18-00140, 2020 WL 1933815, at *4–5 (D. Conn. Apr. 22, 2020); *United States v. Guzman Soto*, --- F. Supp. 3d ---, 2020 WL 1905323, at *4–5 (D. Mass. Apr. 17, 2020).

statute allows a prisoner to seek judicial review after 30 days even without an administrative determination, the first purpose is diminished in favor of a congressional preference " 'for the defendant to have the right to a meaningful and prompt judicial determination of whether he should be released.' " *Ibid.* (quoting *United States v. Russo*, No. 16-cr-441, 2020 WL 1862294 (S.D.N.Y. Apr. 3, 2020)). Judge Rakoff reasoned "that Congress cannot have intended the 30-day waiting period of § 3582(c)(1)(A) to rigidly apply in the highly unusual situation in which the nation finds itself today." *Ibid.* And he derived from the statutory text "that Congressional intent not only permits judicial waiver of the 30-day exhaustion period, but also, in the current extreme circumstances, actually favors such waiver, allowing courts to deal with the emergency before it is potentially too late." *Id.* at *4.

That is a sensible reading of the statute, which has been adopted by another judge in this district. *See United States v. Atwi*, No. 18-20607, 2020 WL 1910152, at *3 (E.D. Mich. Apr. 20, 2020) (Michelson, J.). The BOP's 30-day window to address a compassionate release petition represents but a few ticks on the administrative clock — evidence of Congress's expectation of a quick turnaround before the courts get involved. "But 30 days when the statute was passed and 30 days in the world of COVID-19 are very different." *Ibid.* "Congress likely did not contemplate that a once-in-a-lifetime pandemic would lead hundreds of federal prisoners to seek compassionate release all within a four-week window." *Ibid.* The exhaustion requirement is waivable in appropriate circumstances.

*United States v. Flenory*, No. 05-80955, 2020 WL 2124618, at *5 (E.D. Mich. May 5, 2020) (Lawson, J.).[4] Under the *Haney* approach, waiving strict adherence to the

---

[4] Although Judge Lawson adopted Judge Rakoff's reasoning in *Haney* that a district court "has the authority to waive the exhaustion requirement," he ultimately decided "it is not appropriate to waive it in this instance" because the prisoner had "not made

exhaustion requirement is appropriate when, among other things, requiring exhaustion would subject the prisoner to risk of "undue prejudice." *Id.*

Here, requiring strict exhaustion would subject Reddy to undue prejudice. Given Reddy's combination of underlying illnesses, including diabetes and hypertension, she is at risk of suffering dire medical consequences if she contracts COVID-19. *See United States v. Rodriguez*, --- F. Supp. 3d ---, 2020 WL 1627331, at *7 (E.D. Pa. Apr. 1, 2020) (noting that a prisoner who suffered from both diabetes and hypertension faced a heightened risk of severe medical consequences and/or death if the prisoner contracted COVID-19). Accordingly, under these circumstances, the Court may fairly review Reddy's claim without requiring strict adherence to the exhaustion requirement of § 3582(c)(1)(A).[5]

---

a convincing case that he would suffer 'undue prejudice' by waiting" for the BOP to act on his petition for compassionate release. *Flenory*, 2020 WL 2124618, at *5, 7. In Reddy's case, however, she will suffer undue prejudice if the Court declines to review her case based on exhaustion grounds because Reddy's serious medical conditions place her at risk for severe illness or death if she contracts COVID-19.

[5] As described above, the BOP is currently reviewing Reddy for compassionate release under its most recent guidelines. The Court hoped that the BOP would complete its review and issue a decision before the Court ruled on this motion. To that end, the Court made several inquiries into the status of the BOP's review of Reddy's claim and urged the BOP to quickly determine whether she was eligible for release. In the Government's most recent report to the Court, however, the BOP could not provide a specific time frame for when it would review Reddy for release, but "guessed that it would be a week or more." This uncertainty and delay weighs in favor of the Court considering Reddy's motion, because "under the present circumstances, each day a defendant must wait before presenting what could otherwise be a meritorious petition threatens [her] with a greater risk of infection and worse." *Haney*, 2020 WL 1821988, at *4.

### III

The Court now turns to the merits of Reddy's claim for compassionate release.

### A

Section 3582(c)(1)(A) describes when a court may grant a compassionate

release as follows:

> [T]he court . . . may reduce the term of imprisonment (and
> may impose a term of probation or supervised release with
> or without conditions that does not exceed the unserved
> portion of the original term of imprisonment), after
> considering the factors set forth in section 3553(a) to the
> extent that they are applicable, if it finds that
> . . . extraordinary and compelling reasons warrant such a
> reduction . . . and that such a reduction is consistent with
> applicable policy statements issued by the Sentencing
> Commission.

§ 3582(c)(1)(A).

The "applicable policy statements" mentioned in the statute are found in

U.S.S.G. § 1B1.13.  The comment to that section identifies the reasons for release

that may rise to the level of "extraordinary and compelling":

> 1.   Extraordinary   and   Compelling   Reasons.—
> Provided the defendant meets the requirements of
> subdivision  (2),  extraordinary  and  compelling
> reasons exist under any of the circumstances set
> forth below:
>
>     (A)   Medical Condition of the Defendant.—
>
>         (i)   The defendant is suffering from a
>         terminal illness (i.e., a serious and
>         advanced illness with an end of life

14

trajectory). A specific prognosis of life expectancy (<u>i.e.</u>, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii)     The defendant is—

(I)     suffering from a serious physical or medical condition,

(II)     suffering from a serious functional or cognitive impairment, or

(III)     experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B)     <u>Age of the Defendant</u>.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

    (C)    <u>Family Circumstances</u>.

        (i)    The death or incapacitation of the caregiver of the defendant's minor child or minor children.

        (ii)    The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

    (D)    <u>Other Reasons</u>.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).[6]

One district court has offered the following helpful explanation concerning how to apply the amended compassionate release statute in conjunction with the Sentencing Commission's guidance:

> [P]ursuant to the statutory directive in 18 U.S.C. § 3582(c)(1)(A) and in conjunction with the Sentencing

---

[6] A question has arisen as to whether a district court may apply the "catch all" category of "extraordinary and compelling reasons" in subdivision D of the comment. There is an argument that only the Director of the BOP may find "extraordinary and compelling reasons" under that subdivision because the subdivision references only the Director. However, this Court "follows the growing number of district courts" that have held that a district court may apply subdivision D of the comment and may "consider the vast variety of circumstances that may constitute extraordinary and compelling" reasons for compassionate release. *United States v. Rodriguez*, 424 F. Supp. 3d 674, 681–82 (N.D. Cal. 2019) (quotation omitted) (explaining why, in light of the First Step Act and its amendment of 18 U.S.C. § 3582(c), district courts may apply subdivision D and consider a variety of factors in making the "extraordinary and compelling reasons" determination).

> Commission guidance provided in U.S.S.G. § 1B1.13, the
> Court must consider three issues in evaluating [a federal
> prisoner's] Compassionate Release application: (i) whether
> extraordinary and compelling reasons warrant a sentence
> reduction consistent with the Sentencing Commission's
> policy statement, (ii) whether [the prisoner] is "a danger to
> the safety of any other person or to the community," and (iii)
> whether the section 3553(a) factors "to the extent they are
> applicable," weigh in favor of a sentence reduction. *United
> States v. Bellamy*, 2019 WL 3340699, at *2 (D. Minn. July
> 25, 2019); [*United States v.] York*, 2019 3241166, at *5 [E.D.
> Tenn. July 18, 2019]; *United States v. Beck*, 2019 WL
> 2716505, at *7 (D.N.C. June 28, 2019); *United States v.
> Johns*, 2019 WL 2646663, at *3-4 (D. Ariz. June 27,
> 2019); [*United States v.] McGraw*, 2019 WL 2059488, at *3
> [S.D. Ind. May 9, 2019].

*United States v. Wong Chi Fai*, No. 93-cr-1340, 2019 WL 3428504, at *2 (E.D.N.Y.

July 30, 2019).

**B**

Reddy's constellation of severe and worsening medical impairments

constitutes a "serious medical condition" that warrants compassionate release.  As

described in detail above, she is suffering from orthopedic conditions that cause her

severe pain.  And the combination of Reddy's other conditions – including Type II

diabetes and hypertension – substantially increases her risk of dire medical

consequences and/or death if she contracts COVID-19. *See Rodriguez*, 2020 WL

1627331, at *7 (noting that an inmate who suffered from both hypertension and

diabetes faced increased serious risks from COVID-19).  Moreover, Reddy "is

unable to provide self-care within the environment of" FMC Carswell "because she

is unable to practice effective social distancing and hygiene to minimize her risk of exposure." *United States v. Colvin*, No. 19-179, 2020 WL 1613943, at *4 (D. Conn. Apr. 2, 2020).  Under these circumstances, the combination of Reddy's physical impairments, her illnesses, and her inability to provide self-care constitutes a serious medical condition, and that condition is an "extraordinary and compelling reason" for her release. *See id.* at *3–4 (finding that a prisoner had a serious medical condition warranting compassionate release where the prisoner suffered from illnesses like Reddy's and could not provide self-care during the COVID-19 pandemic); *see also Zukerman*, 2020 WL 1659880, at *5 (same); *Rodriguez*, 2020 WL 1627331, at *7–11 (same).

## C

The Court also finds that releasing Reddy would be consistent with the factors listed in 18 U.S.C. § 3553(a).

The nature and circumstances of Reddy's offense are undoubtedly serious, and that one factor could conceivably weigh against granting compassionate release. *See* § 3553(a)(1).  But the Court finds that releasing Reddy to home confinement at this point and under these circumstances would be consistent with the other § 3553(a) factors, and the Court concludes that those factors outweigh the seriousness-of-offense factor.

Reddy's most relevant personal characteristic is her poor health and vulnerability to COVID-19, and that weighs heavily in favor of release. *See id.*

Likewise, the goal of imposing sufficient punishment would be satisfied by releasing Reddy to home confinement now. *See* § 3553(a)(2)(A). She has served nearly a year in prison while battling her serious health problems and experiencing significant pain. That has undoubtedly been meaningful punishment for her crimes. Moreover, she will suffer additional restrictions on her liberty through home confinement. Her unusually difficult incarceration and the continued restrictions on her freedom of movement, together, satisfy the goal of imposing sufficient punishment.

In addition, releasing Reddy under these unusual circumstances – her poor health and the COVID-19 pandemic – will not undermine the goal of general deterrence. *See* § 3553(a)(2)(B).

Next, releasing Reddy to home confinement will not subject the public to any risk; in Reddy's current state, she is a threat to nobody. *See* § 3553(a)(2)(C).

Furthermore, the most effective way to deliver medical care to Reddy is through her own network of private physicians who are intimately familiar with her conditions and history and thus in the best position to provide the best care in the most efficient manner. *See* § 3553(a)(2)(D).

Finally, Reddy's release will not produce an unwarranted sentencing disparity because it accounts for her unique medical circumstances. *See* § 3553(a)(6).

## IV

Accordingly, for the reasons explained above, **IT IS HEREBY ORDERED** that Reddy's Motion for Compassionate Release (ECF No. 167) is **GRANTED**.

The custodial portion of Reddy's sentence is reduced to time served plus 14 days (to allow for quarantine prior to release from FMC Carswell).  Following the completion of her custodial sentence, Reddy shall begin serving the two-year term of supervised release that the Court imposed in Reddy's Judgment. (*See* Judgment, ECF No. 117, PageID.1748.)  The Court adds as a condition of that supervised release that Reddy shall be subject to home confinement and shall not leave her residence other than for medical appointments and appointments with counsel.  The Court will not order Reddy to wear a GPS tether at this time due to the COVID-19 pandemic (and the Court's reluctance to subject the Court's probation officers to any risks associated with applying Reddy's tether), but the Court will hold a telephonic status conference with counsel in sixty days to discuss whether to require Reddy to wear a tether at that time.  In all other respects, Reddy's original sentence remains unchanged.

   **IT IS SO ORDERED**.

                                          s/Matthew F. Leitman
                                          MATTHEW F. LEITMAN
Dated:  May 11, 2020                      UNITED STATES DISTRICT JUDGE

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on May 11, 2020, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(810) 341-9761